UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DONNA LASHLEY,

                Plaintiff,

v.

NEW YORK UNIVERSITY,

                Defendant.

**MEMORANDUM AND ORDER**

22-CV-1054 (LDH) (RML)

---

LASHANN DEARCY HALL, United States District Judge:

Donna Lashley ("Plaintiff") brings the instant action against New York University ("Defendant"), asserting claims for (i) race discrimination in pay and promotions in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §§ 2000e *et seq.*; (ii) hostile work environment in violation of Title VII; (iii) race discrimination in pay and promotions in violation of New York State Human Rights Law ("NYSHRL") §§ 296 *et seq.*; (iv) hostile work environment in violation of NYSHRL; (v) race discrimination in pay and promotions in violation of New York City Human Rights Law § 8-502 ("NYCHRL"); (vi) retaliation in violation of Title VII; (vii) retaliation in violation of NYSHRL; and (viii) retaliation in violation of NYCHRL. Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts I, III, and V of the complaint.

## BACKGROUND[1]

Defendant New York University is a corporation in the state of New York, with its principal offices in New York County. (Complaint ("Compl.") ¶ 7, ECF No. 1.) Plaintiff is a

---

[1] The following facts taken from the Complaint (Compl. ECF No. 1) are assumed to be true for the purposes of deciding the instant motion.

1

"dark-skinned" Black woman who has worked for Defendant since 1990. (Compl. ¶¶ 6, 8.) Plaintiff alleges that Defendant discriminated against her from 2004 to the present by "dissuad[ing]" her from applying for promotions, denying her promotions, and failing to pay her the same wages as her white counterparts. (*Id.*)

In 2004, Defendant's Human Resources ("HR") Department informed Plaintiff that it would be difficult for her to transition into a management position because she was a union employee. (*Id.* ¶ 11.) According to the Complaint, Defendant subsequently promoted four white union employees to managerial roles. (*Id.* ¶¶ 11–12.) In 2005, Plaintiff interviewed for an administrative assistant position. (*Id.* ¶ 13.) Thereafter, the associate director of HR informed Plaintiff that she was a "better fit" in her current position, and Defendant subsequently hired a less-qualified white man for the role. (*Id.* ¶¶ 13-15.) In 2012, Plaintiff assumed additional responsibilities as the program administrator for the Visiting Scholars Program. (*Id.* ¶17.) Although Plaintiff's predecessor was given the title of director, Plaintiff did not receive a managerial title. (*Id.* ¶17 n.1.) By contrast, a white woman who performs the same duties as Plaintiff at NYU's Visiting Faculty Program holds the title of associate director and is paid more than Plaintiff. (*Id.* ¶¶ 11-17.)

In 2016, Defendant "overlooked and denied" Plaintiff for the associate director position in her program. (*Id.* ¶ 20.) During this time, Plaintiff was travelling with the director on behalf of Vice Dean Joel Steckel and performing recruitment duties associated with that position. (*Id.* ¶ 20 n.2.) In or around 2017 or 2018, Director Anya Takos requested a "promotion and/or a merit increase" for Plaintiff, which was denied. (*Id.* ¶ 21.) In 2017, Defendant "attempted to offer" Plaintiff a 3% pay increase, which was substantially lower than what was given to other employees. (*Id.* ¶ 22.) Throughout Plaintiff's employment, Defendant paid Plaintiff on the

lower end of the Grade 10 salary scale and "in lieu of what was available under her Collective Bargaining Agreement." (*Id.* ¶¶ 23-24.) Plaintiff's annual salary was $39,355.68 as of September 1, 2004, and as of August 30, 2004, the highest salary on the Grade 10 pay scale was $53,040. (*Id.* ¶ 24 n.3.) Over the course of her employment, Defendant paid Plaintiff's white counterparts higher salaries than Plaintiff, for performing similar job duties. (*Id.* ¶ 23.) Plaintiff alleges that her supervisor has made multiple unsuccessful attempts to promote Plaintiff. (*Id.* ¶ 18.) In contrast, Defendant promoted Vice Dean Steckel and Audrey Kim without assigning them additional responsibilities. (*Id.*)

On May 8, 2019, Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"). (Pl.'s Mem. L. Opp'n Mot. Dismiss ("Pl.'s Mem.") at 1, ECF No. 19.) On December 18, 2020, after Defendant learned of Plaintiff's complaint, Plaintiff attended a virtual holiday party with colleagues and students. (*Id.* ¶ 25.) Plaintiff was the only Black person in attendance. (*Id.*) During the party, Vice Dean Steckel stated, "look at Donna, she looks like the Grinch," humiliating Plaintiff and perpetuating the "angry black woman" stereotype. (*Id.*) In or about December 2020, Vice Dean Steckel transferred most of Plaintiff's professional responsibilities to a recently hired graduate student. (*Id.* ¶ 26.) On December 2, 2021, Plaintiff received a right to sue letter for her EEOC complaint. (Am. Compl., Ex. A.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this

3

standard requires more than a "sheer possibility" of a defendant's liability, *id.,* "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

### I. Timeliness of Plaintiff's Title VII Claim[2]

To be timely, a claim for discrimination under Title VII must be filed with the EEOC within 300 days of the alleged act of discrimination. *See Shields v. NYC Health & Hosps. Corp.,* 489 F. Supp. 3d 155, 161 (E.D.N.Y. 2020) (citing *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999)); *see also Harris v. City of New York,* 186 F.3d 243, 248 n.2 (2d Cir. 1999) (noting that New York's State Division of Human Rights ("DHR") makes New York a "deferral state" for Title VII purposes, and therefore, discrimination claims must be filed with the EEOC within 300 days.) Here, Plaintiff's EEOC charge was filed May 8, 2019. (Pl.'s Mem. at 8.) Defendants argue, therefore, that any Title VII claim predicated upon conduct prior to July 2018 is time barred. (Defs.' Mem. L. Supp. Mot. Dis. ("Defs.' Mem.") at 4-5, ECF No. 18.) The Court agrees.

---

[2] Plaintiff argues that Defendant should be equitably estopped from raising a statute of limitations defense as "their policy of discrimination is deceptive and conceals its true intentions of dissuading employees from applying formally for promotions in order to evade liability under failure to promote claims which may arise." (Pl. Mem. at 11.) As Defendant correctly argues, Plaintiff's reliance on *Milani v. International Business Machines Corp., Inc*, 322 F. Supp. 2d 434 (S.D.N.Y. 2004), is unpersuasive. Plaintiff fails to make allegations to support her claim. (Defs.' Mem 19–20.)

4

Plaintiff does not dispute that her Title VII claim is predicated, in part, on conduct that occurred more than 300 days from the date of her EEOC complaint. In an effort to save those aspects of her Title VII claim, Plaintiff argues that they are not time barred because Defendant's actions are part of an "implemented system of dissuasion" that meets the conditions of the continuing violation doctrine. (Pl.'s Mem. at 9.) Not so. It is true that the continuing violation doctrine "allows courts to consider conduct that would ordinarily be time barred as long as the untimely incidents represent an ongoing unlawful employment practice." See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002) (internal quotation marks omitted) (citations omitted). However, the Supreme Court made clear in *Nat'l R.R. Passenger Corp. v. Morgan*, that discrete acts do not constitute an "unlawful practice" sufficient to satisfy the continuing violation doctrine. 536 U.S. at 111, 114. And, more pointedly, claims for failure to promote, failure to hire, termination, or refusal to transfer are deemed discrete acts outside of the reach of the continuing violation doctrine. *See Morgan,* 536 U.S. at 110–15; *see also Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135, 157 (2d Cir. 2012) (finding that even when a failure to promote is part of an ongoing discriminatory policy, each instance is still a discrete act for the purpose of the statute of limitations); *Gittens v. Winthrop Hospitalist Assocs., P.C.,* 19-cv-5070, 2022 WL 504490, at *2 (E.D.N.Y. Feb. 18, 2022) (rejecting continuing violation argument and dismissing failure to hire or promote claims prior to the statutory period).[3]

---

[3] In the face of this clear authority, the Court is wholly unpersuaded by the cases relied upon by Plaintiff in support of her claims. As an initial matter, each of the cases relied on by Plaintiff predates *Morgan*, which "largely curtailed the continuing-violations theory when applied to 'discrete discriminatory acts.'" *United States v. City of New York*, No. 07-cv-2067, 2009 WL 212154, at *4 (E.D.N.Y. Jan. 28, 2009) (quoting *Austion v. City of Clarksville*, 244 F. App'x. 639, 247 (6th Cir. 2007)). And in any event, they are in inapposite. Both *Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2d Cir.1981), and *Acha v. Beame*, 570 F.2d 57 (2d Cir. 1978), involve disparate impact class actions based on discriminatory employment policies, to which the continuing violation doctrine may still be applicable in the Second Circuit. *See City of Bridgeport*, 247 F.2d at 275 (class action disparate impact claim based on discriminatory test); *see Acha*, 570 F.2d at 65 (class action based on discriminatory policy); *see also City of New York*, 2009 WL 212154, at *6-7 (declining to hold time-barred disparate impact claim because *Morgan* involved a

To the extent Plaintiff's Title VII failure-to-promote claim is predicated on conduct predating her EEOC charge by more than 300 days, it is dismissed. Accordingly, Plaintiff's only remaining claims for failure to promote under Title VII are: (1) Plaintiff's claim that Anya Takos sought a promotion and/or merit increase on her behalf in 2017 and 2018, and (2) Plaintiff's claim that an unnamed supervisor attempted to secure a promotion on her behalf at unspecified times. (Compl. ¶¶ 18, 21.)

## II.  Timeliness of Plaintiff's NYSHRL and NYCHRL Claims

"[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts." *See Cruz v. City of New York, 21-cv-1999,* 2021 WL 5605139, at *5 (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). The statute of limitation is tolled during the period when a claim is filed with the EEOC. *Id.*; *see also* New York City, N.Y., Code § 8-502.

Here, Plaintiff received her right to sue letter from the EEOC on December 2, 2021—2 years and 208 days after filing her charge. (Compl. Ex. A, ECF No. 1-1.) Accordingly, any claims based on acts occurring prior to August 4, 2016—5 years and 208 days prior to the filing of the instant action—are untimely.[4] *See Gittens*, 2022 WL 504490 at *3. Plaintiff, therefore, has three timely or potentially timely claims: (1) that Anya Takos sought a promotion on Plaintiff's behalf in or around 2017 and 2018 is timely; (2) that Plaintiff was "overlooked and

---

disparate treatment claim); *Rodriguez v. Westbury Pub. Schools*, 13-cv-4976, 2015 WL 4459351, at *7 (E.D.N.Y. July 15, 2015) ("The notion of a 'continuing violation' is usually associated with a discriminatory policy, and not isolated discrete acts"); And in *Smith*, the Second Circuit affirmed dismissal of time-barred claims because Plaintiff failed to file EEOC charges related to each act, and he did not allege a continuing violation in the charges that he did file. *See Smith v. Am. Pres. Lines, Ltd.*, 571 F.2d 102, 105–06 (2d Cir 1978). Plaintiff here asserts a disparate treatment claim without alleging a broader discriminatory policy or custom, making *Morgan* squarely applicable.

[4]  In *Gittens v. Winthrop*, Plaintiff received a right to sue letter 231 days after filing his EEOC charge. 2022 WL 504490 at *3. To calculate the appropriate statute of limitations period, the Court added the 231-day tolling period to the statutory three-year limitations period, for a total of three years and 231 days. *Id.* Any claims filed prior to that date were dismissed as untimely. *Id.* Here, the Court applies the same methodology.

denied" an associate director position in 2016 might be timely; and (3) that her supervisor requested a promotion on her behalf at an unspecified date might be timely.

Plaintiff's contention that her NYCHRL and NYSHRL claims are saved by the continuing violation doctrine is unpersuasive here as well. It is true that "[a] continuing violation may exist under the NYCHRL when there is a 'consistent pattern' or a 'continuing policy' of discriminatory or retaliatory acts." *See Cruz*, 2021 WL 5605139, at *5. However, a gap of as little as 20 months between acts has been found to be sufficient to deny the application of the continuing violation doctrine. *See Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 41 (N.Y. App. Div. 1st Dep't 2009). Here, Plaintiff alleges broadly that "Defendant continued to dissuade and discourage Plaintiff from applying for promotional opportunities as well as denying her of same despite her qualifications," but she only alleges being overlooked or denied a promotion five times over the course of 14 years. (Compl. ¶¶ 16, 19.) Additionally, Plaintiff's most recent allegation prior to 2016 occurred in 2012—no less than four years apart. (*Id.* ¶¶ 17, 20.) That is plainly insufficient. Consequently, all of Plaintiff's pre-2016 failure-to-promote claims pursuant to NYCHRL must be dismissed as untimely. The standard for the application of the continuing violation doctrine under the NYSHRL is even more onerous. Therefore, having found that the continuing violation doctrine does not apply to the NYCHRL claim—it is plain that it does not apply to her NYCHRL claim as well. *See Cruz*, 2021 WL 5605139, at *5 (dismissing plaintiff's NYCHRL claims because "although the continuing violation doctrine under the NYCHRL is broader than the continuing violation doctrine under federal law or the NYSHRL.").

\*   \*   \*

Accordingly, Plaintiff's remaining potential failure-to-promote allegations include (1) Plaintiff's claim that she was "overlooked and denied" an associate director role, pursuant to NYSHRL and NYCHRL (2) Plaintiff's claim that Anya Takos sought a promotion on Plaintiff's behalf pursuant to Title VII, NYSHRL, and NYCHRL, and (3) Plaintiff's claim that a supervisor sought a promotion for Plaintiff, pursuant to Title VII, NYSHRL, and NYCHRL.

### III.   Failure to Promote

To establish a *prima facie* failure-to-promote case under Title VII, NYSHRL, and NYCHRL, a plaintiff must allege that "(1) she is a member of a protected class; (2) she 'applied and was qualified for a job for which the employer was seeking applicants;' (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."[5] *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)) (applying Title VII standard); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000), *superseded in part on other grounds by statute*, N.Y.C. Local L. No. 85 (applying Title VII standard for NYSHRL to NYCHRL claims).  Certainly, at the pleading stage, a plaintiff need not plead facts establishing a prima facie case. *Littlejohn v. City of New York*, 795 F.3d at 308. Nonetheless, a plaintiff must still allege sufficient facts to give "'plausible support to the reduced requirements' of the *prima facie* case." *Hunt v. Con Edison Co. N.Y.C.* ("*Hunt I*"), 16-cv-0677, 2017 WL 6759409, at *6 (E.D.N.Y. Dec. 29, 2017) (quoting *Littlejohn*, 795 F.3d at 311. Accordingly, to survive a motion to dismiss a failure to promote claim, a plaintiff must "allege

---

[5] NYCHRL again has a broader standard than Title VII and NYSHRL, but courts in the Second Circuit have broadly adopted "the Title VII and NYSHRL standards as a guide in analyzing [an] NYCHRL failure to promote claim, while 'keeping the NYCHRL's more liberal standards in mind.'" *Ellis v. Cent. 21 Dept. Stores*, 975 F. Supp. 2d 244, 266 (E.D.N.Y. 2013) (quoting *Davis–Bell v. Columbia Univ.,* 851 F.Supp.2d 650, 679 (S.D.N.Y.2012)); *see also Campbell v. Cellco Partnership*, 860 F.Supp.2d 284, 297–98), *appeal dismissed*, (Aug. 14, 2012).

that she or he applied for a specific position or positions and was rejected therefrom." *Brown*, 163 F.3d at 710. In other words, it is insufficient for a plaintiff to merely assert that on several occasions she requested a promotion. (*Id.*) Defendants argue that such generic pleading is exactly what Plaintiff has done here and her failure to promote claim should be dismissed accordingly. (Def.'s Mem. at 3–4.) The Court agrees.

In her complaint, Plaintiff alleges that "[f]rom 2012 to 2016, Defendant continued to dissuade and discourage [her] from applying for promotional opportunities as well as denying her of the same despite her qualifications." (Compl. ¶ 19.) Plaintiff further alleges that "[i]n or about 2017 and 2018, Anya Takos requested both a promotion and/or merit increase for Plaintiff, which was denied by Defendant." (*Id.* ¶ 21.) Conspicuously absent from these allegations is any mention of a specific position to which Plaintiff applied. The closest Plaintiff comes to satisfying this pleading requirement is her artful reference to the having been "overlooked and denied" an associate director position in 2016. (*Id.* ¶ 20.) However, a close review of that allegation reveals that Plaintiff fails to plead that she applied for the associate director position let alone was rejected from it. Telling, in opposition to Defendant's motion, Plaintiff does not direct the Court to any allegation identifying a specific position to which she applied and was rejected. Instead, Plaintiff urges the Court to look to *Brown v. Coach,* where the Second Circuit advised that modification of pleading requirements may be appropriate "where the facts of a case make an allegation of a specific application a quixotic requirement." (Pl.'s Mem. at 5 (quoting *Brown*, 163 F.3d at 706.)) This Court cannot help but note that in *Brown* the Court ultimately rejected the argument for a modification and dismissed the failure to promote claim for failing to allege that plaintiff submitted an application for a specific position. *See Brown*, 163 F.3d at 711–712.

9

In any event, here, Plaintiff argues that allegations for a specific position should not be deemed a requirement in the face of allegations that Defendants endorsed "a continuous policy of discrimination by way of informal procedure requiring employees to meet with heads of Human Resources before formally interviewing." (Pl.'s Mem. at 7.) Where to start. *First*, as Defendants point out, the complaint is devoid of any allegation that might suggest the existence of such a policy at the time the meetings were had in 2004 and 2006— let alone any time after 2016. (Def's. Reply Mem. Supp. Mot. Dis. ("Defs.' Reply") at 3, ECF No. 20.) *Second*, and again as Defendant notes, even if such a policy existed, Plaintiff's allegations do not establish that such a policy was discriminatory. (*Id.*) Plaintiff does not allege for example that only black employees were subject to the policy, only women, or only black women. Nothing of the sort. Any purported policy fails to provide a basis to exempt Plaintiff from her pleading requirement.

Assuming for the sake of argument that Plaintiff had alleged some continuous pattern of discrimination, and assuming such a pattern provided a basis for an exemption in cases of this sort[6], the complaint suffers from the same flaw as the complaint in *Brown*. That is, Plaintiff has "failed to allege the specific positions to which she would have applied had the alleged practice not existed." *See Brown*, 163 F.3d at 712. And this Court finds, like in *Brown,* that there is "no reason to relieve [Plaintiff] of meeting the de minimis pleading requirement." *Id.* at 712.

## CONCLUSION

For the foregoing reasons, Plaintiff's failure-to-promote claims are DISMISSED. Plaintiff is granted leave to amend her complaint to provide the requisite specificity as to the claims that might be timely.

---

[6] A narrow exception to the formal application pleading requirement exists in disparate impact and pattern or practice cases, however, this standard likely only applies to class-action pattern-or-practice claims where a plaintiff alleges the specific position for which they would have applied. *Brown*, 163 F.3d at 711.

|  |  |
|---|---|
|  | SO ORDERED. |
| Dated: Brooklyn, New York<br>        September 29, 2023 | /s/ LDH<br>L SHANN D ARCY HALL<br>United States District Judge |